IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| KAHILIAULANI FOSTER, | ) | CIVIL NO. 14-00163 SOM/KSC |
| | ) | |
| Plaintiff, | ) | ORDER AFFIRMING SOCIAL |
| | ) | SECURITY DECISION DENYING |
| vs. | ) | DISABILITY INSURANCE BENEFITS |
| | ) | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) ) ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**ORDER AFFIRMING SOCIAL SECURITY DECISION
DENYING DISABILITY INSURANCE BENEFITS**

**I.      INTRODUCTION.**

Plaintiff Kahiliaulani Foster appeals an order by an Administrative Law Judge ("ALJ") denying Social Security disability insurance benefits.  However, Foster fails to demonstrate that the denial of benefits was based on legal error or was not supported by substantial evidence.  The court is sympathetic to Foster, who appears to have many ailments, but given the standard under which this court must review the ALJ's order, this court affirms the order.

**II.     STANDARD.**

A district court may reverse an ALJ's Social Security disability benefits determination only when it is "based on legal error or is not supported by substantial evidence."  Ryan v. Comm'r of Social Security, 528 F.3d 1194, 1198 (9th Cir. 2008); Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005).

"'Substantial evidence' means more than a mere scintilla, but less than a preponderance." Valintine v. Comm'r Social Security Admin., 574 F.3d 685, 690 (9th Cir. 2009). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, and even when the evidence is susceptible to more than one rational interpretation, [a district court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." Ludwig v. Astrue, 681 F.3d 1047, 1051 (9th Cir. 2012) (quotation marks, alterations, and citations omitted).

In determining whether a decision is supported by substantial evidence, a district judge must consider the administrative record as a whole. When the evidence reasonably supports either affirmance or reversal, the district judge may not substitute his or her judgment for the ALJ's. See Parra v. Astrue, 481 F.2d 742, 746 (9th Cir. 2007). In other words, a district court judge must apply a "highly deferential standard of review." Valintine, 574 F.3d at 690.

### III.     BACKGROUND FACTS.

On or about December 30, 2010, Foster submitted an application for Social Security disability insurance benefits, claiming to have been disabled since February 26, 2010. See Administrative Record ("AR") at 148.

On June 29, 2011, a Social Security disability examiner determined that Foster was not disabled. See AR at 64. Foster was sent a Notice of Disapproved Claim the following day that informed her that she did not qualify for benefits because she was not disabled under Social Security rules. See id. at 67-70. The Notice stated that Foster's condition was not severe enough to keep her from working. Id. at 67. Foster had claimed that she was unable to work because of a heart murmur; asthma; a heel spur; back, hip, and tailbone problems; and migraines and headaches. Id. The Notice stated that the medical evidence indicated that, given her claimed conditions, Foster should still be able to perform her past security guard work. Id. The Notice said, "If your condition gets worse and keeps you from working, write, call or visit any Social Security office about filing another application." Id.

On or about July 19, 2011, Foster requested reconsideration of the initial denial of Social Security disability insurance benefits. See AR at 71. Reconsideration was denied on November 1, 2011. See id. at 65. Foster was sent a Notice of Reconsideration that told her that her claim had been "independently reviewed by a physician and disability examiner." Id. at 72. Additional medical evidence from October 2011 was considered. Id. The Notice of Reconsideration stated, "We realize that you may have some limitations because of your

3

condition.  However, the medical evidence shows that your condition should not interfere with your ability to perform the type of work you did in the past."  Id.

On or about January 17, 2012, Foster requested a hearing by an ALJ.  See AR at 75-77.

A video hearing was held on November 5, 2012, before ALJ Gary J. Lee.  See AR at 29-62 (transcript of hearing).  Foster was represented by counsel at the hearing.  See id. at 29.

The hearing began with Foster's testimony that she had done stocking and delivery work for an auto parts store.  See AR at 33-34.  She then worked as a security guard at the Makaha Surfside full-time for several months until she was fired in February 2010.  Id. at 34-35.  Foster testified that she looked for work for a year, but stopped looking when she started getting sicker and instead went to Remington College to study to become a medical assistant, completing the program in July 2012, four months before the hearing.  Id. at 38.

Foster testified that she had problems with her back and that she had arthritis in both knees, heel spurs in both feet, migraine headaches at least twice a week, asthma, hand tremors, "restless syndrome," depression, and anxiety.  She said that these conditions prevented her from working as a medical assistant.  See AR at 39-41.  She further testified that the shaking in her hands made it difficult for her to use them.  Id.

4

at 49. Foster said that she had shortness of breath two or three times a week and used a cane daily. Id. at 50. Foster had surgery planned later in November 2012 to correct her heel spurs. Id. at 51. She testified that her treating physician, Dr. Engels, had told her that "everything is in [her] mind." Id. at 42.

Foster sought mental health treatment at the Waianae Coast Comprehensive Health Center in March 2012 for depression and anxiety. See AR at 42-43.

Foster testified that her husband helped her take her medications and did everything for her, including grocery shopping, cooking, cleaning, and washing clothes. She said that she generally stayed home, sometimes cleaning her yard. See AR at 47-48.

Dr. Harvey L. Alpern (identified as "Dr. Halpern" in the transcript), an impartial medical expert who sat through Foster's testimony, testified next. Having reviewed Foster's medical history, he testified:

> She has the history [of] ventricular septal defect repair, with a tiny jet residual, and no pulmonary hypertension. Unfortunately, her physicians write the opposite in the record and say she has hypertension and pulmonary hypertension, but she does not, she has legadema [phonetic], and they're giving her very strong medication for it, and there's no indication that it's coming from the heart at all, it's probably coming from the second diagnosis which is obesity with a 38 BMI. She has a history of headaches, . . 

5

> . a history of asthma, and history of plantar
> fasciitis, and heel spurs.  The heel spurs
> are going to be treated with surgery and the
> plantar fasciitis, as far as I can see, has
> not been treated.  That's about it.

AR at 52-53.  Dr. Alpern noted that Foster's hand tremors were not documented well.  Id. at 53.  Dr. Alpern stated that, given Foster's conditions, she should "have restrictions of lifting 20 pounds occasionally, [and] 10 pounds frequently."  AR at 53.  Dr. Alpern stated that she should be restricted to standing and walking two out of eight hours in light of her foot problems, and that she could sit for six hours.  Id.  Dr. Alpern testified that Foster's impairments did not, "either singularly or in combination, . . . meet or equal a listing [as impaired]."  Id. at 53.

Dr. Robert J. McDevitt, another impartial medical expert, testified next.  He too had reviewed Foster's records and testified, "Based just on her behavioral health problems, she should be able to do simple repetitive, work with her physical limitations as outlined by the doctor."  AR at 55.  He opined that she could not do any fast-paced work.  Id. at 57.  He testified that, because of her post-traumatic stress disorder, she should not be subject to intense or hard supervision and should have only minimal contact with the public.  Id.

Kevin Z. Yi, an impartial vocational expert, testified that, in the previous 15 years, Foster had worked as a security

6

guard, classified as a light exertion, semi-skilled job. See AR at 58. She had also worked as an auto parts stock and delivery person, classified as a heavy exertion, semi-skilled job, and had been a self-employed sales person, classified as a light exertion, semi-skilled job. Id. When asked whether he thought Foster could perform her past work, given the limitations (walking/standing for two hours per day, "occasional posturals, bending, stooping, kneeling," no concentrated exposures to noxious dust, fumes or other irritants, no fast-paced job, and no interactions with the general public), Yi testified that Foster could not perform her past jobs. Id. at 58-59. He testified that she could perform a sedentary exertion job, such as the job of a final assembler (25,000 jobs nationally and 30 in Hawaii), a toy stuffer (17,000 jobs nationally and 16 to 20 in Hawaii), or an electronic inspector (40,000 jobs nationally and 40 in Hawaii), all unskilled jobs not on production lines. Id. at 59-61. But Yi also testified that, if Foster had headaches that caused her to miss two days of work a month, she would not be able to do that work. Id. at 60.

On November 19, 2012, the ALJ issued his decision denying Social Security disability insurance benefits. See AR at 14 to 23. He ruled that Foster had not been disabled for disability insurance benefits purposes beginning on February 26, 2010. Id. at 14. He began his analysis by examining the five-

step sequential evaluation process set forth in 20 C.F.R. § 404.1520(a)(4). The Ninth Circuit has summarized those steps:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, App. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing her past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the residual functional capacity ("RFC") to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

With respect to step one, the ALJ found that Foster had not engaged in substantial gainful activity since February 26, 2010. See AR at 16. This meant that the ALJ was required to proceed to step two and evaluate whether Foster had a medically severe impairment or combination of impairments.

With respect to step two, the ALJ found that Foster had "the following severe impairments: status post ventricular septal defect repair, bilateral heel spurs with plantar fasciitis, headaches, lumbar spine degenerative disc disease, asthma,

obesity, depressive disorder with psychotic features, and post-traumatic stress disorder." AR at 16. The ALJ was required to proceed to step three and determine whether the impairment or combination of impairments met or equaled a listed impairment under 20 C.F.R. pt. 404, subpt. P, App. 1.

With respect to step three, the ALJ found that Foster did not have an impairment or combination of impairments that met or equaled a listed impairment under 20 C.F.R. pt. 404, subpt. P, App. 1. AR at 16. In making that determination, the ALJ examined Foster's claimed mental impairments, but not her physical impairments. The ALJ concluded that Foster's mental impairments did not meet the criteria set forth in either section 12.04 or section 12.06 of 20 C.F.R. pt. 404, subpt. P, App. 1. Each section has a Paragraph B that must be satisfied. For both sections, the Paragraph B provisions require that the mental impairment have resulted in at least two of the following: "1. Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in maintaining concentration, persistence, or pace; or 4. Repeated episodes of decompensation, each of extended duration." The ALJ determined that neither of the two Paragraph B provisions was satisfied in Foster's case because she had only a mild restriction in daily living, moderate difficulties in social functioning, moderate difficulties in

9

concentration, persistence, or pace, and no episodes of decompensation. See AR at 17. Having determined that Foster failed to satisfy step three with respect to her mental impairments, the ALJ was required to move on to step four.

With respect to Foster's physical medical issues, the ALJ did not expressly determine that step three had or had not been satisfied. The court notes that Dr. Alpern testified that Foster's medical impairments, either by themselves or in combination, did not meet or exceed the listing. See AR at 53. In any event, the ALJ proceeded to step, examining whether Foster was capable of performing her past relevant work and determining that she was not, based on the vocational expert's testimony. See AR at 21.

Having determined that Foster satisfied step four, the ALJ proceeded to step five and examined whether Foster had the residual functional capacity to perform any other substantial gainful activity in the national economy. The ALJ determined that Foster could perform light work, except that she was limited to two hours of standing or walking in a day; occasional postural activities, such as bending, crouching, and kneeling; no work on ropes or ladders; no concentrated exposure to noxious dust, fumes, or odors; no fast-paced or high-production work; and infrequent verbal interactions with the public. See AR at 17-18. After examining Foster's documented medical conditions, the ALJ

did not find Foster's description of her limitations credible. The independent medical testimony indicated that Foster's impairments did not meet any listing. Moreover, Foster was able to complete medical assistant school despite her medical limitations, suggesting that Foster herself thought she would be able to perform such work when she graduated. Id. at 20.

In so determining, the ALJ did not credit Foster's treating physician, Dr. Winslow S. Engel, who opined on August 4, 2011, that Foster was "totally disabled due to her back pain and plantar faciitis." See AR at 543. The ALJ stated that the "finding of disability is one reserved for the Commissioner . . . and the documented medical evidence . . . does not fully support the extreme degree of limitations in [Engel's] opinion[]." AR at 21.

The ALJ also determined that a treating nurse practitioner was not an acceptable medical source. See AR at 21.

The ALJ concluded that, considering Foster's age, education, work experience, and residual functional capacity, there were jobs in significant numbers in the national economy that Foster could perform. See AR at 22. This determination was based on the vocational expert's testimony that Foster could perform unskilled sedentary occupations such as those of a final assembler, a toy stuffer, or an electronic inspector.

On or about December 7, 2012, Foster asked the Social Security Appeals Council to review the ALJ's decision. See AR at 10. The Appeals Council denied that request, advising Foster that she could file a civil action to have the decision reviewed by a court. Id. at 1-3.

Foster filed the present appeal on April 4, 2014. See ECF No. 1.

**IV.    ANALYSIS.**

Foster fails to demonstrate that the ALJ's decision contained legal error or was not supported by substantial evidence. Absent legal error or a failure to support a decision by substantial evidence, the ALJ may not be reversed by this court. See Ryan, 528 F.3d at 1198; Bayliss, 427 F.3d at 1214 n.1.

To be eligible for Social Security disability benefits, Foster must demonstrate that she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). For purposes of § 423(d)(1)(A), Foster

> shall be determined to be under a disability
> only if [her] physical or mental impairment
> or impairments are of such severity that
> [she] is not only unable to do [her] previous
> work but cannot, considering [her] age,
> education, and work experience, engage in any

> other kind of substantial gainful work which
> exists in the national economy, regardless of
> whether such work exists in the immediate
> area in which [she] lives, or whether a
> specific job vacancy exists for [her], or
> whether [she] would be hired if [she] applied
> for work. For purposes of the preceding
> sentence (with respect to any individual),
> "work which exists in the national economy"
> means work which exists in significant
> numbers either in the region where such
> individual lives or in several regions of the
> country.

42 U.S.C. § 423(d)(2)(A). Additionally, "[i]n determining whether an individual's physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under this section, the Commissioner of Social Security shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." 42 U.S.C. § 423(d)(2)(B).

The ALJ applied the required five-step sequential analysis to determine whether Foster was entitled to Social Security disability benefits. See 20 C.F.R. § 404.1520(a)(4). The burden was on Foster to prove steps one through four. With respect to step five, the burden shifted to the Commissioner of Social Security to show that Foster could perform other substantial gainful work. Id. Foster does not clearly challenge the ALJ's analysis under the five-step test. Nothing in her

13

opening brief, ECF No. 25, directly challenges the ALJ's determination that Foster had the residual functioning capacity to perform sedentary unskilled work or that jobs existed in the national and local economy meeting that description. This court determines that the ALJ's decision was not based on legal error and was supported by substantial evidence.

At most, with respect to step three of the test, the ALJ may not have expressly addressed Foster's physical ailments or the combination of them in determining whether she met or equaled a listed impairment under 20 C.F.R. pt. 404, subpt. P, App. 1. AR at 16. But the ALJ earlier acknowledged those physical impairments and appears to have implicitly considered them in determining in step five that Foster had the residual functioning capacity to do sedentary light work and that jobs existed in the national and local economies that Foster would be able to do, rendering her not disabled for purposes of Social Security disability insurance benefits. The ALJ's determination as to step five is certainly supported by substantial evidence. In addition to the vocational expert and independent medical testimony, Foster herself testified that she attended and completed medical assistant school during the period she was claiming she was disabled.

Foster's opening brief does not clearly identify any specific problem with the ALJ's decision. It states things like

"Medical conditions not taken into account by Social Security Administration." See ECF No. 25, PageID #s 831. The opening brief then attaches various medical reports as exhibits. See id., PageID #s 832-848. These exhibits are a mental health condition report dated February 4, 2015, a neurological report dated October 8, 2014, and surgery reports dated November 12 and December 15 and 17, 2012. Id. All of these reports are dated after the hearing date and shortly before or after the ALJ's decision, and Foster nowhere points to their inclusion in the Administrative Record. Foster does not show that what appears to be "new evidence" dating to a time after the administrative hearing "is material and that there is good cause for the failure to incorporate such evidence into the record" such that this court can remand the matter for the Commissioner of Social Security to take into account. See 42 U.S.C. § 405(g).

Nor does Foster demonstrate that any of the new evidence is relevant to the disability determination she challenges. While the reports from 2012, 2014, and 2015 may demonstrate that her condition has deteriorated, that does not establish that the ALJ erred. See Getch v. Astrue, 539 F.3d 473, 484 (7th Cir. 2008) ("Medical evidence postdating the ALJ's decision, unless it speaks to the patient's condition at or before the time of the administrative hearing, could not have affected the ALJ's decision and therefore does not meet the

15

materiality requirement."); Flaten v. Sec. of Health & Human Servs., 44 F.3d 1453, 1461 (9th Cir. 1995) (only disabilities during insured status are relevant); see also 20 C.F.R. § 404(b) ("If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision.").

For the same reasons, Foster's husband's recent description of her medical conditions does not establish error in the ALJ's determination that she was not disabled at the time he made his decision. See ECF No. 27.

**V.      CONCLUSION.**

Because the ALJ's decision is supported by substantial evidence and is not based on legal error, the court affirms the decision. This determination does not mean that Foster can never receive Social Security disability insurance benefits. At the hearing, the attorney for the Commissioner of Social Security represented that Foster was eligible for such benefits until later this year and that she could reapply for such benefits based on deterioration of her physical and/or mental conditions since the ALJ's decision.

16

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, May 13, 2015.



      /s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge

Foster v. Colvin, Civ. No. 14-00163 SOM/KSC; Order Affirming Social Security Decision Denying Disability Insurance Benefits